Good morning, your honors. May it please the court, my name is Ani Ahmed. I represent the appellant in this case, the United States. May it please the court, counsel. The United States appeals the district court decision to suppress the evidence in this case based on lack of probable cause. The United States appeals it based on the fact that the United States admits that the court made a factual error, a clear error in its interpretation of the factual basis of the search. First, the United States admits that the officers did have probable cause based on the fact that the officer had recovered $5,700 from the sock of the defendant and then later found marijuana on the defendant after he had been arrested and handcuffed. Could you give me a nice, neat list? It looks to me as though the law here is not that hard. You look at Ross and that more recent case that Gant, and it looks as though the scope of the search of the car was no narrower and no wider than the scope of a search that would have been authorized by a warrant supported by probable cause. The search is whatever a magistrate could have authorized. So what I'd like, and there they had a lot more in Ross to justify searching the trunk. Here, you approach the car and what it looks like is a couple of people making out or having sex in the car. They give this story, they're watching the city lights and the seat is all reclined and the lights are in the opposite direction. It looks like people making out or having sex. Where do you get your probable cause to search the trunk and the backpack in it? Your Honor, I would respectfully disagree that they did have more in Ross. In fact, in Ross they had information from an informant. In Ross they had a reliable informant who said Bandit was selling narcotics kept in the trunk of his car parked at 439 Ridge. Correct, Your Honor. So they had good reason to think there were narcotics in the trunk of the car because that's where he keeps his inventory according to an informant who has already been determined to be reliable. Right, Your Honor. But that's all they had before they conducted the search. In this case, the officer had actually been there. They also saw the car there. Correct. That's where the informant said it would be. He did specifically describe the defendant in Ross and did specifically describe the vehicle. Why don't we get to the point of this case now. What did they have besides the appearance of some people making out or having sex in a car? Your Honor, the district court actually correctly found that the initial contact by the officer was lawful. They were in the park late at night. He had been to that Zack Road and had caught him. He had no problem with a stop because they're parked in a no-parking zone. Correct. Once the search was conducted, incident to his arrest and the money was found and marijuana at the district office. You've got to break this search up. Once the search was conducted, you're speaking of the search of his person. Correct, Your Honor. Not yet to the trunk. Correct, Your Honor. When he's taken out of the vehicle initially and he's told that he's under arrest for driving with a suspended license, he is initially searched, Your Honor. $5,700 is found in his sock. He's placed in the squad car. At that point, the officer, Deputy Smith, returns to the car and speaks with Cassandra Bond, who was the female. The $5,700 would mean a guy who's waiting to buy something, not that he already has it or is selling it. Well, that was a distinction. That's a lot of money. Correct, Your Honor. That's a distinction the district court did make in this case, and the United States would submit whether he committed the crime or had already committed the crime. Certainly, that was a factor taken in by the officer as to making a reasonable inference whether he was engaged in criminal activity. I carry money in my money belt when I leave for vacation. There's a lot less when I get back. Correct, Your Honor. I would think with dope buyers, it would be the same thing, more money before they buy the dope than afterwards. Or after they had sold it, Your Honor, after they had sold it. And that could be a reasonable inference in this case. Oh, I see. The idea is he's sold dope, but he's got more inventory. Well, he didn't have that much. I mean, he had about 20 grams of crack cocaine. He certainly could have had more prior to that. At that point, you don't know about the crack cocaine. We do not know. I have a question here, and my concern is the same as suggested by Judge Kleinfeld's questions. All you really have, as best I can figure out, is $5,700 in his sock. He tells a story to explain it. It's not the most compelling a story, but all you really have is you've got somebody who's carrying a lot of cash. Correct. Nothing else that I heard suggests to me that there's reason to believe evidence is going to be found in the trunk. You've got a personal quantity bag of marijuana. You've got someone who gives every sign of being engaged in a different kind of activity. He's parked in no parking zone, but that doesn't get you to the trunk. What gets you to the trunk? What establishes probable cause to believe something's going to be in the car? Your Honor, you don't need a different sort of distinction between the interior passenger of a compartment. Take back the trunk. What gives rise to a reasonable, not a reasonable belief, probable cause that there will be evidence of a crime found in the car? You don't get it based on the arrest because Gant makes it pretty clear that that's more limited. He's in a squad car, and you don't have a belief that there's something in connection with his arrest. He wasn't arrested for anything having to do with drugs. Correct. So what is it that establishes probable cause that something else will be found in the car? Your Honor, as you've mentioned, the marijuana, the money, but also the fact that... The marijuana really doesn't do it. If you've got a bag of personal quantity, that doesn't give rise to much suspicion you're going to find crack cocaine in the trunk. He looks like a user, not a seller, based on having a bag of that quantity. Well, then the officer goes back, Your Honor, and does conduct a search, a very short search of the vehicle and does find the scent markers, which indicated to him that it was masking the odor of some sort of controlled substance. Every cab I ride in has one of those deodorizers hanging from the rearview mirror. In this case, he found two, one in the dash in the central compartment. That's a lot. I don't know. That seemed kind of weak to me. You're doing the right thing. Add up the pieces. Now, at the end, we've got to decide if those pieces are enough. So you've got the money, you do have the bag of marijuana, you've got the scent. Right. And then the canine comes, Your Honor, and this is a type of seat that he could have easily pulled down. He had ample opportunity to do so. In fact, there was testimony about that, that they were making... That really doesn't get us very far, because at that point, he can't reach into it. You can't do it by search incident to arrest, because he's in the squad car. So I'm not sure that the fact that the back seat can be pulled down gives you very much. Well, if he had probable cause, Your Honor, which is what the United States submits to the officers had. Yeah, yeah. You need probable cause to search the car just as though there was no arrest involved and the guy was two miles away at the police station. You need probable cause such that you could get a warrant to look in the back of the car. So we've got the money. Right. We've got the deodorizer things. We've got the penny bag. What else do we have that constitutes probable cause? Your Honor, the time of night, the situation in which they were found. The officers passed history in that certain road, what he had found, and based on all these reasonable inferences that he had made, there was a fair probability that he would find a controlled substance in that vehicle. Now, I understand that, Your Honor, as far as going to the trunk of the vehicle, the United States would submit, if it went to a magistrate and the magistrate approved a warrant for that vehicle based on the money, the marijuana, the scent markers and so on, it would allow the search of the entire vehicle. We're mixing concepts here. The question is what a magistrate could properly approve. And it looks to me like what you've got so far is $5,700, user quantity of marijuana, two deodorizers, time of night. Is there anything else to make a reasonable policeman think that there's contraband or other evidence of crime in the trunk? Also by the fact that their stories didn't make any sense when the officers were there. Correct, Your Honor. And while there certainly could be innocent. That's the phony story about the $5,700, right? Actually, the phony story about coming up there to watch the lights. Well, that, I think, hurts your case rather than helps it. Gosh, when I was a teenager, we'd drive to the road along the Potomac River and say we're watching the submarine races. Yeah, it's a phony story, but it had nothing to do with dope. Well, Your Honor, but this officer's experience was that individuals came to the end of that road right there to engage in one of two things, and he arrested people there for one of two things, prostitution or engaging in drug activity. The first doesn't give you much probable cause of the second. Correct. The fact that he thinks that maybe there's prostitution, and he later came to suspect that wasn't the case, so that there was something of that nature going on but it wasn't being paid for, that doesn't help you at all, as best I can tell, is to suggest that there are drugs in the trunk or any place in the car. I don't want to separate out the trunk. I'm with you on that. But I don't understand how that location, that time of night, gives you very much when the indications are what's going on there that might be illicit isn't the drug part, it's the sex part. Correct, Your Honor. But I think that in his mind, at that point, understood that he later determined that this was not prostitution activity, and Ms. Bond was taken home. It could be unpaid sexual activity. That seemed to be what the district judge thought it was. It could have been, Your Honor, but at that point what the officer was thinking was that they were engaged in some sort of nefarious activity, and he later determined that. How does that help you with the search? Well, Your Honor, because it's... If that's what they were doing, it's probably not likely the evidence of it's going to be found in the trunk. Well, Your Honor, the reason I'm arguing it is because he's looking at the totality, the circumstances here of what he's got, and he's got a situation where he believes they're engaged in nefarious activity. He's found controlled substances on the individual, and I would submit that even if it's user amount of controlled substances, that would not take away from the search itself whether... I'm troubled now because of the word nefarious. The district judge thought it looked like people having sex in the car. I don't understand what's nefarious about that. I guess if it's paid for, it's nefarious. Well, Your Honor, even so, that's not probable cause to search the car. I'm getting a little lost in your... Well, Your Honor, it was just one of the factors that he considered, and what I mean by nefarious is that he had found individuals there engaging in that sort of conduct before, and that was one... Which was sex? Prostitution, yes, Your Honor, and drug use on that same road, and late at night. Does he have any reason to think those two activities are correlated? I just don't understand how the possibility of sex, whether it's prostitution or not, gives probable cause to believe there are drugs hidden in the car. Your Honor, I don't think that he took the prostitution to search the car. I think that it was mostly the fact that he had found the money, that he was unable to explain where the money had come from. So the sex part really doesn't... It shouldn't be on our list of the elements of supporting probable cause. The only reason I mention it, Your Honor, was to show what he was initially thinking as he left the vehicle prior to conducting the search, and that was one of the factors he did consider. I have a question. Thank you. Go ahead. He was arrested because he didn't have a driver's license. His license was revoked, yes, Your Honor. And the car was towed away. Eventually it was, yes, Your Honor. And impounded. Yes, Your Honor. Could they have conducted an inventory search on impounding the car? No, Your Honor, they could not. Number one is there is a Spokane County policy, which states that when a search is conducted pursuant to an inventory, that they will not search the inside of a trunk or locked compartments within that trunk. I will also submit, Your Honor, as the record shows that the vehicle was later determined afterwards, after the search was conducted, to be a rental vehicle. I believe Deputy Smith testified that once he called for a tow, he determined it was a rental vehicle. The defendant had earlier told him it was a leased vehicle. The rental company, likewise, could not have done a search of that backpack because we all knew that, and what I mean by we is defense counsel and I knew that the rental company would have simply returned that backpack to the defendant or whoever had last rented that vehicle without searching the backpack. So that was not a legitimate argument that the United States could make. Thank you. Thank you, counsel. Morning. Christian Phelps for Defendant Appellee. Mr. Robidoux. Counsel, one of the things that underlines this case from the beginning is that none of these officers conducted this search based on probable cause. What about the $5,700? That's a lot of money. I could see him having it if he was leaving on a jet plane at 6 a.m. for an expensive vacation. Other than that, it's kind of hard to see why a person would carry that much cash, and his story seems silly. I submit, Your Honor, that's certainly problematic, and I would assume that law enforcement, when they encounter cash like that on somebody, it would somewhat raise suspicion with them. But nonetheless, as Americans, we're entitled to walk about freely. We're entitled. The question isn't whether the cash is a violation of law. It's whether it gives rise to probable cause to think there's a violation of law in the trunk. I guess the question then is probable cause of what, necessarily, having cash on your person? The idea is, if I understand it right, cash late at night means you're in the business of transactions and dope. That is a reasonable inference, but looking at this situation and the totality of these circumstances, there was a number of other things that would ultimately assuage you from that conclusion. I once had a client with an unusual amount of cash, and it turned out he was a Major League Crafts player. So there can be innocent explanations. But the story here was obviously phony. Well, maybe it's true, but it looked phony. I paid $5,700 by somebody on a reservation who's an alcoholic transient whose name he doesn't know. How many alcoholic transients pay off $5,700 in cash for unidentified work done? I agree that that aspect is troubling. So why isn't that a basis to say, Hmm, okay, he's not telling us anything real about why he's holding that much cash. Do you have a reason to believe, based on having that much cash in his sock, that either he's a buyer, in which case he may have already bought some, or a seller, in which case he might have already sold some, and maybe we're going to find drugs when we look in the trunk? Why isn't that enough to establish probable cause? I think that basis on its own just wouldn't be. That scenario, then, would have officers the ability to, anytime they find somebody with a significant amount of cash and a relative story that they feel may not be completely legit. I don't know about significant. My guess is that most judges would try to think, How much cash have I ever carried and people I know? A few hundred dollars? Probably not. A few thousand? That's serious money. I agree. As I've said, that's a troubling aspect of this case, but by itself wouldn't be enough. If it was, then anytime any citizen is found with cash in their pocket, significant, several thousand, and the officer determines that I'm not quite sure of your story, therefore I'm entitled to... You're posing a fair question, but let's be fair about the way the question is posed. Is holding $5,700 in cash on your person, late at night, remote area, and a story of this nature, which not only the cop may think, but I think objectively, I don't believe. I think it would be highly unlikely for that story. So it's not simply the cop's subjective belief. We're supposed to be the objective observers. And I would say objectively, a story which was on its face, highly unlikely to the point of being incredible. Not impossible, but incredible. Why isn't that enough to say, hmm, $5,700, late at night, place where drug deals take place, I think there probably is probable cause of drugs being someplace in that car. What's wrong with that? Well, at that point and in that scenario, you have to make the next leap that this money must be related to a drug transaction. It would certainly rise... It would be something that I just don't think can be true. And objectively, I'm prepared to say as a judge, that's a pretty unlikely story. So he's not giving me a legitimate explanation for having that much money. Now, there could be an honest but a non-criminal explanation of some kind. The only other thing I recall that he mentioned was that he didn't believe in banks and he's trying to avoid child support. That doesn't mean you carry it around in your purse late at night in a dark spot. I mean, you hide money. You get a vault or you get a safe deposit box or you bury it in the backyard. Carrying it on your purse suggests a real possibility of using it. He offers a scenario that doesn't wash in my mind. Why isn't that probable cause, if he's not telling me the truth, if he's got this much cash, it's because he's going to do a deal he doesn't want to tell me about. That's probably a drug deal. Why isn't that probable cause? I just don't believe that it raises to that level. It certainly would prompt further inquiry, which is what occurred here, when the officer, after finding that, then interviews the person that he's with and, by all accounts and the record, is satisfied with her explanation. She's not a prostitute, that they're up there for romance, they've previously met, and the record bears out that officers were satisfied with that. They believe that. They certainly didn't think that she was... I don't know how that changes the balance at all with regard to the possibility of drugs being in the car. I think by their interview with her, it would have been clear, especially when she says, when you pulled up, he tried to hand me something, I didn't know what it was, I didn't take it. The inference being that, if she's willing to say that, certainly if she knew that there was drugs in the car or was involved in a drug transaction, that would have been volunteered as well, when she candidly indicated, he tried to hand me this and I wouldn't take it, and then they go search him again. The officers were satisfied with her explanation. They were satisfied that there wasn't a drug transaction going on there and that there wasn't prostitution going on there. They were satisfied that she didn't know that he had drugs or whether he might have had drugs elsewhere in the car, weren't they? That's a fair statement, but they were at least satisfied that she wasn't involved in any transaction. There wasn't a transaction or drug dealing or any of that. They tried to hand her some marijuana. Correct. So under that scenario, they were satisfied this was not a drug transaction. Not with her. Correct. At that spot, at that time and place. What we have got, at a minimum, is a guy, they know he's ahead and he's got $5,700 cash and no good explanation of why he has that much cash on him. And the test that we're supposed to apply is under the totality of the circumstances, is there a fair probability of finding dope in the trunk? And we know that that's supposed to mean less than a certainty and less than a preponderance of evidence. So under that test, why doesn't the $5,700 in the possession of a head with no good story to explain why he has that much cash on him give rise to a fair probability that there will be dope in the trunk? Intuitively, I would say that that's just not enough. That factor alone, that amount of cash being in that area at night on its own, is not enough to make, and I don't want to be included by saying a quantum leap. I think what we're coming down to here is cash in that quantity looks less suspicious to you than it does to me. And I'm trying to figure out why. I think, Judge, that part of it is because there was so much more that happened after that that would have diminished the value of that money being in somebody's pocket at that time of night. The fact that, as I indicated before, the interview of the young woman, her account of why they were there was satisfactory to the officers. Looks like he's just making out with her. And when it looks like he's getting busted, he tries to get her to hold his stash. Exactly. But the stash is not a serious amount. It's not a deal or amount. That helps you, I think. But it does show that the guy's ahead. He does something about marijuana. That's true. The officer, though, also searched the interior of the car and didn't find anything. Never smelled marijuana, didn't find anything in the car. He even pulled apart the console and took apart the dash and searched inside the car. He did see the scent markers there, but this is also a rental car, and it's not uncommon to have a scent marker in a rental car. Furthermore, they brought a canine to the scene. The canine searched the exterior of the car, didn't alert on anything. Get back to the cash. For it not to give rise to a fair probability of dope in the trunk, I have to be able to imagine a whole lot of reasons why somebody not in the drug business would have that much cash on them late at night when he's making out with a stranger. I think if you take that fact alone, just the cash, it probably is a stronger inference. But my point is that that's not what we have here, just that alone. There was many things that occurred afterwards that would devalue the significance of just having that cash. As I indicated, the search that revealed nothing, the search of the canine around the car that revealed nothing, the search of the canine inside the car that he didn't alert on, all of those things would minimize that inference that there must be drugs here because he's got this cash. When I've got a trained canine animal that doesn't alert on that, that would devalue that inference of this cash being related to drugs in the car. Thank you, counsel. I can't remember if the government kept time. Thank you. Robodeau is submitted.
judges: Alarcon, Kleinfeld, Clifton